# EXHIBIT D

ETHICS & LEGAL COMPLIANCE
LAW DEPARTMENT



## OFFICE OF THE GENERAL COUNSEL
HEADQUARTERS, WASHINGTON, D.C.

IN RE, APPEAL OF CASE NO.
2021-FPRO-03224

APPEAL NO. 2022-APP-00041

ATTORNEY CHRISTOPHER DOYLE
ON BEHALF OF GENERAL COUNSEL THOMAS J. MARSHALL

OPINION AND ORDER

After careful consideration, this office is affirming in full the action of Government Information Specialist Tai Thompson, on Freedom of Information Act ("FOIA") request 2021-FPRO-03224.

I. STATEMENT OF FACTS

1. On September 15, 2021, the requester submitted a FOIA request seeking the number of residential postal customer who filed temporary and permanent Change of Address ("COA") requests from January 1, 2021 to June 30, 2021. The request sought the information delineated by the customer's former and new county and former and new state.

2. By correspondence dated September 17, 2021, Government Information Specialist Tai Thompson responded to the request. Ms. Thompson informed the requester that some of the information requested has been made publicly available pursuant to 5 U.S.C. § 552(a)(2), due to the fact that the information is frequently requested under the FOIA. The requester was further provided the URL address for the FOIA Library website where the requester could access those records. In addition, Ms. Thompson informed the requester that county level COA data could be purchased through the Postal Service's City State Product. Finally, the remainder of the requested information was withheld in full pursuant to Exemption 3 and 39 U.S.C. 410(c)(2), which permits the Postal Service to withhold information of a commercial nature that would not be disclosed under good business practice.

3. By email dated November 24, 2021, the requester appealed the action of Ms. Thompson. The requester challenged the application of Exemption 3 and 39 U.S.C. 410(c)(2). In the appeal, the requester asserts that the origin/destination COA information is not "commercial in nature," and rather, should be classified as information related primarily to the Postal Service's governmental functions or its activities as a provider of basic public services.

II. APPLICABLE LAW

Congress enacted the FOIA to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (quoting *Rose v. Dep't of the Air Force*, 495 F.2d 261, 263 (2d Cir. 1974). Congress balanced this objective by recognizing that "legitimate governmental and private interests could be harmed by release of certain types of information." *Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 621 (1982). The FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions." *Milner v. Dep't of the Navy*, 562 U.S. 562, 564 (2011). In addition, other laws allow the Postal Service to withhold certain categories of records and information. *See, e.g.*, 39 U.S.C. § 410(c).

If information is "specifically exempted from disclosure by statute," then it is also exempt from mandatory disclosure under the FOIA by incorporation. 5 U.S.C. § 552(b)(3) ("Exemption 3"). One statute that exempts information from disclosure is Section 410(c)(2) of the Postal Reorganization Act. 39 U.S.C. §

475 L'ENFANT PLAZA SW
WASHINGTON, DC 20260-4201

https://about.usps.com/who/legal/foia/

410(c)(2) ("Section 410(c)(2)"); *see also Wickwire Gavin v. U.S. Postal Serv.*, 356 F.3d 588, 592 n.6 (4th Cir. 2004); *Carlson v. U.S. Postal Serv.*, No. 13-cv-06017-JSC, 2015 WL 9258072, at *4 (N.D. Cal. Dec. 18, 2015); *Airline Pilots Ass'n v. U.S. Postal Serv.*, No. 03-2384 (ESH), 2004 WL 5050900, at *5 (D.D.C. June 24, 2004). This statute operates independently of the FOIA to exempt certain information from mandatory disclosure.

Section 410(c)(2) permits the Postal Service to withhold "information of a commercial nature, including trade secrets, whether or not obtained from a person outside the Postal Service, which under good business practice would not be publicly disclosed." 39 U.S.C. § 410(c)(2). "Information is of a commercial nature if it relates to commerce, trade, profit, or the Postal Service's ability to conduct itself in a businesslike manner." 39 C.F.R. § 265.14(b)(3); *see also Carlson v. U.S. Postal Serv.*, 504 F.3d 1123, 1128-29 (9th Cir. 2007)(applying the common meaning of the term "commercial" to include all information that relates to commerce, trade, or profit). Section 410(c)(2) permits the withholding of a broader range of commercial information than similar FOIA exemptions. *See Carlson*, 504 F.3d at 1129 (applying the "common meaning" of the term "commercial"). This broader scope exists because the Postal Service is commissioned to operate like a private corporation and, therefore, must follow sound business principles. *Id.* at 1127-28.

In determining whether particular information is "commercial" in nature, the Postal Service considers six factors relating to whether the information is more akin to its role as a business entity competing in the market or its role as a provider of public services. *See* 39 C.F.R. § 265.14(b)(3)(i). No single factor is determinative, but all are considered to determine the overall character of the information. 39 C.F.R. § 265.14(b)(3)(ii). In addition, the Postal Service has identified an extensive, though not exhaustive, list of types of information that are considered commercial and, thus, exempt from disclosure under Section 410(c)(2). *See* 39 C.F.R. § 265.14(b)(3)(ii).

If the information is commercial in nature and would not be disclosed "under good business practice," then the FOIA does not require the Postal Service to disclose the information. *Wickwire Gavin*, 356 F.3d at 594-95. No separate analysis is necessary to consider whether disclosure would cause competitive harm or to balance the commercial interest with the public's interest in knowing the information. *See Id.*; *Carlson*, 2015 WL 9258072 at *8-10. "[T]he contours of the good business practice exemption [are] to be gleaned by looking to the commercial world, management techniques, and business law, as well as to the standards of practice adhered to by large corporations." *Wickwire Gavin*, 356 F.3d at 592.

    III.    L<small>EGAL</small> A<small>NALYSIS</small>

In order for the Postal Service to properly withhold the requested information under Exemption 3 and Section 410(c)(2), it must be (1) commercial in nature and (2) information that would not be publicly disclosed under good business practice. 39 U.S.C. § 410(c)(2). Here, the requester sought the total number of COA requests made by customers from January 2021 to June 2021. Specifically, information pertaining to origin/destination data was withheld pursuant to Section 410(c)(2). After reviewing the actions taken in this matter by the records custodian, we have determined that COA data aggregated by origin/destination was properly classified as commercial information that would not be disclosed under good business practice.

As stated in the response letter dated September 17, 2021, the COA information sought is currently being used in the development of a commercial product. Unlike other federal government agencies, the Postal Service is not funded through taxpayer dollars. Instead, the Postal Service relies on the revenue it generates through both services and products it provides to the public. As such, the information is commercial in nature, as it pertains to the Postal Service's ability to obtain a profit. *See e.g., Carlson*, 504 F.3d at 1129 (applying the common meaning of the term "commercial" to include all information that relates to commerce, trade, or profit). Additionally, the fact that the product is still in the development phase strengthens the argument that the requested information was properly withheld under Exemption 3 and 410(c)(2). One of the six (6) factors considered by the Postal Service when determining whether information is commercial in nature is whether "the information would be of potential benefit to individuals or entities in economic competition with the Postal Service, its customers, suppliers, affiliates, or business

partners or could be used to cause harm to a commercial interest of the Postal Service, its customers, suppliers, affiliates, or business partners." 39 C.F.R. § 265.14(b)(3)(i)(C). Disclosing this information would benefit our competitors by providing them with specific details regarding the components of the new commercial product, and the information being used to develop the product. This information could be used by competing individuals and entities to produce products similar in nature and in direct competition to our product currently in development.

The requester asserts that the COA data is not proprietary and therefore is not protected by Section 410(c)(2). Because the information is being used to develop a commercial product for the Postal Service, we note that the information may, indeed, be "proprietary." Nevertheless, the language of Section 410(c)(2) does not require the information to be proprietary or a trade secret in order to be withheld from disclosure. Instead, the statute protects "commercial information" from disclosure. "Commercial information" could include trade secrets, but is not limited to trade secrets and proprietary information. The requester further argues that the COA information is not comparable to the specific examples of commercial information provided by the Postal Service in 39 C.F.R. § 265.14(b)(3)(ii). However, we note that the list the requester references is not meant to be exhaustive. As noted above, when applying the factors in the Postal Service's regulations, this information qualifies as "commercial information."  Thus, the requested information is commercial in nature and satisfies the first prong of Section 410(c)(2)'s test.

We also find that the requested information would not be publicly released as part of good business practice. Because this information is currently being used to develop a commercial product, release of these records would compromise the product's development process. Additionally, private businesses do not disclose the specific details of their commercial business initiatives or products as they are being developed. *See Wickwire Gavin*, 356 F.3d at 594 ("In determining whether Exemption 3 applies, it is uncontroverted that the statutory term 'good business practice' should be decided with reference to what businesses normally do."); *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 742 F. Supp. 2d 76, 82 (D.D.C. 2010) ("[I]n determining whether it would be good business practice to disclose requested commercial information, the Postal Service should be expected to evaluate the information in the same manner as a corporation in the commercial world."). And, since the information would not be disclosed under good business practice, we are not required to assess the public's interest in the information or whether disclosure would cause competitive harm. *Wickwire Gavin*, 356 F.3d at 594-95. The material inquiry is whether it would be good business practice for the Postal Service to disclose the commercial information sought. Accordingly, because the records satisfy both prongs of Section 410(c)(2)'s test, the records were properly withheld from disclosure under Exemption 3 of the FOIA and Section 410(c)(2).

IV.    CONCLUSION

For the reasons stated above, we conclude that the withheld records contain commercial information which would not be disclosed under good business practice pursuant to Exemption 3 and Section 410(c)(2). Therefore, the action of Government Information Specialist Tai Thompson is affirmed in full.

For the General Counsel,

*Christopher Doyle*

Christopher Doyle
Attorney
Ethics and Legal Compliance