```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                      :   22cv6112 (DLC)
BLOOMBERG L.P. and DOW JONES &        :
COMPANY, INC.,                        :
                                      :   OPINION AND ORDER
                      Plaintiffs,     :
                                      :
               -v-                    :
                                      :
UNITED STATES POSTAL SERVICE,         :
                                      :
                      Defendant.      :
                                      :
------------------------------------- X
```

APPEARANCES:

For the plaintiffs:
Reporters Committee For Freedom of The Press
Katie Townsend
1156 15th Street NW, Suite 1020
Washington, DC 20005

For the defendant:
Tomoko Onozawa
U.S. Attorney's Office, SDNY (Chambers Street)
86 Chambers Street
New York, NY 10007

DENISE COTE, District Judge:

Bloomberg L.P. ("Bloomberg") and Dow Jones & Company, Inc. ("Dow Jones"; together, "Plaintiffs") have filed suit against the United States Postal Service ("USPS" or "Defendant") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel production of certain anonymized change-of-address data ("Requested COA Data"). The USPS asserts that the Postal Reorganization Act exempts production of this data because it is

related to a commercial product of the USPS. The parties have cross-moved for summary judgment. For the reasons that follow, the motion for summary judgment brought by the USPS is granted.

## Background

The following facts are undisputed. When individuals, families, and businesses move and change address, they can notify the USPS of a temporary or permanent change of address ("COA"). The USPS maintains data for these COA filings. Summary COA data is publicly available on the USPS website and is updated monthly.[1] The publicly available summary data contains a list of every zip code in the United States; the total number of COA filings into and out of each zip code; the total number of individuals, families, and businesses submitting those COA filings; and the total number of temporary and permanent COA requests for each month from 2018 to the present. This data does not include where the COA filers that are moving from a specific zip code are moving to.

On March 30, 2021, a journalist for Bloomberg CityLab made a FOIA request for COA data, per zip code, for the month of December 2020, including origin and destination information for the COA filings ("Bloomberg FOIA Request"). For example, the requested data would show how many COA filings indicated moves

---

[1] See FOIA Library, USPS, https://about.usps.com/who/legal/foia/library.htm.

2

from one specific zip code to another.  The journalist had received such COA records from the USPS pursuant to FOIA requests filed in December 2020 and February 2021.

On April 19, the USPS denied the Bloomberg FOIA Request pursuant to FOIA Exemption 3, 5 U.S.C. § 552(b)(3), and 39 U.S.C. § 410(c)(2).[2]  The USPS explained that the requested records "qualifie[d] as 'information of a commercial nature' under Section 410(c)(2)" because the information is related to information that is "under development for a commercial product."  The USPS affirmed its decision on July 29.

Dow Jones owns The Wall Street Journal ("WSJ").  On September 15, a WSJ reporter made a FOIA request to the USPS for monthly COA data by county for residential postal customers for January 2021 to June 2021.  Specifically, the reporter asked for an Excel document with the following columns: YYYYMM, Old County, Old State, New County, New State, Total Perm, Total Temp ("Dow Jones FOIA Request").  The USPS had fulfilled similar FOIA requests filed in February and March 2021.

On September 17, the USPS denied the Dow Jones FOIA Request pursuant to Exemption 3, 5 U.S.C. § 552(b)(3), and 39 U.S.C. § 410(c)(2).  The USPS explained that the COA data requested

---

[2] As further described below, 39 U.S.C. § 410(c)(2) exempts from FOIA USPS "information of a commercial nature . . . which under good business practice would not be publicly disclosed."  39 U.S.C. § 410(c)(2).

3

"qualifie[d] as 'information of a commercial nature' under Section 410(c)(2)" because it is related to COA counts by origin and destination which is information that is "currently under development for a commercial product." The USPS continued, "Requests for COA data that seek the originating and destination location, at any level, is no longer releasable under the FOIA." On December 9, the USPS affirmed its decision.

The "commercial product" to which the USPS referred is a licensed data offering called Population Mobility Trends ("PMT"). The USPS launched PMT on May 12, 2023. PMT provides tabular COA data to subscribers. For each ZIP code, PMT shows the top three ZIP codes to which COA filers are moving for (1) moves within the county, (2) moves within the state, and (3) moves outside the state. PMT also includes "the three most prevalent demographic attribute ranges" for temporary, permanent, individual, family, and business filings. The PMT data is refreshed with data from the past 30 days, and subscribers are able to see 12-month and 48-month data sets when setting up the first annual subscription, which include data from the 2019-2020 calendar year.

The Plaintiffs filed this lawsuit on July 18, 2022. USPS moved for summary judgment on December 9. The Plaintiffs cross-moved for summary judgment on January 20, 2023. The motions became fully submitted on March 10.

4

The evidence submitted with the motions includes the FOIA requests, decisions, and appeals; declarations from the two journalists who made the requests; and a declaration from Jeffrey Tackes ("Tackes Declaration"), the Director, Digital Business Services of the USPS. The Tackes Declaration describes PMT and its development and commercial value to the USPS.

## Discussion

FOIA was enacted in 1966 "to facilitate public access to Government documents." Jabar v. U.S. Dep't of Just., 62 F.4th 44, 49 (2d Cir. 2023) (citation omitted). "FOIA is premised on a policy strongly favoring public disclosure of information in the possession of federal agencies." Id. (citation omitted). "Agencies are required to disclose requested documents unless they fall within an enumerated exemption." Knight First Amendment Inst. at Colum. Univ. v. U.S. Citizenship & Immigr. Servs., 30 F.4th 318, 327 (2d Cir. 2022). The statutory exemptions "do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." Dep't of the Int. & Bur. of Indian Affs. v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001) (citation omitted). The exemptions are thus to be "given a narrow compass." ACLU v. CIA, 24 F.4th 863, 867 (2d Cir. 2022) (citation omitted).

"FOIA cases are often resolved by summary judgment." Seife v. U.S. FDA, 43 F.4th 231, 238 (2d Cir. 2022). "[A]n agency

withholding documents responsive to a FOIA request bears the burden of showing that a FOIA exemption shields the materials at issue." Am. Oversight v. U.S. Dep't of Just., 45 F.4th 579, 587 (2d Cir. 2022).

> A district court may award summary judgment on the basis of agency declarations if the declarations describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record or by evidence of agency bad faith.

ACLU Immigrants' Rts. Project v. U.S. Immigr. & Citizenship Servs., 58 F.4th 643, 651 (2d Cir. 2023) (citation omitted). In other words, the claimed exemption must "appear logical and plausible." Am. Oversight, 45 F.4th at 587 (citation omitted). "Upon such a showing, a plaintiff who nonetheless seeks to compel disclosure must make a showing of bad faith on the part of the agency or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate." Id. (citation omitted). "[A]ll doubts as to the applicability of the exemption must be resolved in favor of disclosure." ACLU, 24 F.4th at 867 (citation omitted). A court "review[s] the adequacy of the agency's justifications de novo." ACLU v. Dep't of Just., 681 F.3d 61, 69 (2d Cir. 2012).

The USPS seeks to withhold material under FOIA Exemption 3. See 5 U.S.C. § 552(b)(3).

> Exemption 3 allows an agency to withhold information from public disclosure if (1) the information is specifically <u>exempted from disclosure by statute</u>; and (2) the exemption statute requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue or establishes a particular criteria for withholding or refers to particular types of matters to be withheld.

<u>ACLU</u>, 24 F.4th at 867 (emphasis added). "To claim this Exemption, the government must demonstrate that: (1) the statute invoked qualifies as an Exemption 3 withholding statute, and (2) the materials withheld fall within that statute's scope." <u>Spadaro v. U.S. Customs & Border Protection</u>, 978 F.3d 34, 42 (2d Cir. 2020) (citation omitted).

The USPS cites 39 U.S.C. § 410(c)(2) ("§ 410(c)(2)") as the applicable withholding statute, and the Plaintiffs do not dispute that this provision is a withholding statute under Exemption 3. The sole issue in dispute is whether the data being withheld falls within the scope of § 420(c)(2).

Section 410(c)(2) is a provision of the Postal Reorganization Act ("PRA"), 39 U.S.C. §§ 101 <u>et seq.</u> The PRA was enacted in 1970 "[t]o improve and modernize the postal service." Postal Reorganization Act, Pub. L. 91-375, 84 Stat. 719, 719 (1970). With the PRA, "Congress intended the Postal Service to be run more like a business than had its predecessor,

7

the Post Office Department." Kuzma v. U.S. Postal Serv., 798 F.2d 29, 31 (2d Cir. 1986) (citation omitted).

The Committee of Post Office and Civil Service for the House of Representatives, in its Report recommending passage of the Postal Reorganization and Salary Adjustment Act of 1970 or PRA, explained the reasons for this modernization as follows: "For several years there has been a growing awareness -- increasingly widespread and increasingly acute -- that our vast sprawling postal complex is heavily overburdened and deeply in trouble." H.R. Rep. No. 91-1104, at 4 (1970). Among the many problems cited by Congress was the fact that the Post Office was operating "at a huge deficit." Id. at 5. Congress observed that "[a]n effective postal service needs an updated financial policy that is fully responsive to operating needs." Id. The PRA aimed to

> [e]liminate serious handicaps that are now imposed on the postal service by certain legislative, budgetary, financial, and personnel policies that are outmoded, unnecessary, and inconsistent with the modern management and business practices that must be available if the American public is to enjoy efficient and economical postal service.

Id. at 2. In short, Congress wanted the USPS to "become self-sustaining." Id. at 10.

The PRA addresses the extent to which FOIA applies to the USPS. Section 410 of the PRA provides that, except as provided for by subsection (b), "no Federal law dealing with the public .

8

. . . including the provisions of chapters 5 and 7 of title 5, shall apply to the exercise of the powers of the Postal Service." 39 U.S.C. § 410(a).  FOIA is in chapter 5 of title 5 of the U.S. Code.  Subsection (b), in turn, states that FOIA applies to the USPS, id. § 410(b)(1), but subsection (c) creates several exceptions to FOIA's applicability, id. § 410(c).

The exception to FOIA upon which USPS relies provides that § 410(b)(1) "shall not require the disclosure of information of a <u>commercial nature</u>, including trade secrets, whether or not obtained from a person outside the Postal Service, which under <u>good business practice</u> would not be publicly disclosed."  Id. § 410(c)(2) (emphasis supplied).  The PRA does not define "commercial nature" or "good business practice."

"When interpreting a statute, [courts] begin with the plain language of the statute, giving the statutory terms their ordinary or natural meaning."  <u>Spadaro</u>, 978 F.3d at 46 (citation omitted).  "When that meaning is not clear, [courts] make use of a variety of interpretive tools, including canons, statutory structure, and legislative history."  <u>Id.</u> (citation omitted). When a term is not defined by statute, courts "look to its ordinary meaning found in contemporary dictionary definitions" from when the statute was enacted.  <u>Mader v. Experian Info. Sols., Inc.</u>, 56 F.4th 264, 269 (2d Cir. 2023) (citation omitted).

The parties dispute whether the Requested COA Data (1) constitutes "information of a commercial nature," and (2) "would not be publicly disclosed" "under good business practice." Each prong of § 410(c)(2) will be addressed in turn.

I.   "Information of a Commercial Nature"

The Requested COA Data are "information of a commercial nature" under § 410(c)(2). In 1970, Black's Law Dictionary defined "commercial" as "[r]elating to or connected with trade and traffic or commerce in general." Commercial, Black's Law Dictionary (Rev. 4th ed. 1968); see also Commercial, Black's Law Dictionary (5th ed. 1979). "Commerce," in turn, was defined as "[t]he exchange of goods, productions, or property of any kind." Commerce, Black's Law Dictionary (Rev. 4th ed. 1968). "Trade" was defined as "[t]he act or business of exchanging commodities by barter; or the business of being and selling for money." Trade, Black's Law Dictionary (Rev. 4th ed. 1968).

In 1978, the Court of Appeals for the Second Circuit opined, for purposes of applying Exemption 4 within the FOIA statute itself, that "'Commercial' surely means pertaining or relating to or dealing with commerce."³ Am. Airlines, Inc. v. Nat'l Mediation Bd., 588 F.2d 863, 870 (2d Cir. 1978). In 2007,

---

³ Under Exemption 4, "trade secrets and commercial or financial information obtained from a person and privileged or confidential" are exempt from FOIA. 5 U.S.C. § 552(b)(4).

10

the Court of Appeals for the Ninth Circuit surveyed dictionary definitions of the word commercial and concluded that, for purposes of § 410(c)(2) of the PRA, "information is commercial if it relates to commerce, trade, or profit." Carlson v. U.S. Postal Serv., 504 F.3d 1123, 1129 (9th Cir. 2007) (citation omitted).

This broad, commonsense definition of the word commercial compels the conclusion that the Requested COA Data are "information of a commercial nature." To obtain more revenue for itself, USPS has decided to license COA data to subscribers for a fee. Exchanging data for money falls within the plain meaning of the word "commerce" and the term "information of a commercial nature." Because the information sought by the Plaintiffs is being used for commercial purposes by the USPS and is directly related to the USPS's participation in commerce, the information is "of a commercial nature" under § 410(c)(2).

The Plaintiffs put forward two arguments in support of their position that the Requested COA Data are not "information of a commercial nature." First, relying on the Ninth Circuit's decision in Carlson, 504 F.3d 1123, the Plaintiffs assert that, in order for the requested information to be exempt from FOIA under § 410(c)(2), the information must be "of a commercial nature in the first instance." Id. at 1129. Because the Requested COA Data were not commercial "in the first instance,"

11

the Plaintiffs argue, they are not "information of a commercial nature."

This argument fails. It seeks to add a limitation to the statutory language that does not appear in the statute. Moreover, Carlson does not support this restrictive reading of the term. In Carlson, the Ninth Circuit held that § 410(c)(2) did not exempt from FOIA disclosure information about the location of post offices, their telephone numbers, and hours of operation. Id. at 1128. The Court of Appeals described the requested information as "[b]asic," id., and observed that the information was "already publicly available" from the USPS. Id. at 1130. Neither of these attributes apply to the COA data requested here, and the holding in Carlson is not in tension with a finding that the Requested COA Data is information of a commercial nature.

Next, the Plaintiffs point to caselaw interpreting "commercial" under FOIA Exemption 4. The Plaintiffs argue that, in the Exemption 4 context, courts in the Second Circuit have rejected a broad reading of the word "commercial" and have instead interpreted FOIA exemptions narrowly. The district court decisions to which the Plaintiffs point do not suggest that the Requested COA Data is not commercial data. Indeed, as already noted, in applying FOIA Exemption 4, the Second Circuit

12

has given the word "commercial" a broad reading.  See Am. Airlines, Inc., 588 F.2d at 870.

II.  "Good Business Practice"

The Requested COA Data are also information that would not be publicly disclosed under "good business practice."  The Fourth Circuit has encouraged courts to look "to the commercial world, management techniques, and business law, as well as to the standards of practice adhered to by large corporations" in deciding what constitutes good business practice.  Wickwire Gavin, P.C. v. U.S. Postal Serv., 356 F.3d 588, 592 (4th Cir. 2004) (citation omitted).  Stated concisely, courts applying this prong of § 410(c)(2) should do so by "reference to what businesses normally do."  Id. at 594.

The Requested COA Data is commercial data that would not be publicly disclosed under good business practice.  As explained by Tackes in his declaration, location data demonstrating the movement of people is a valuable commodity, and companies that sell this information would not ordinarily release that information for free to the public.  Disclosure through FOIA of the data underlying the statistics that the USPS seeks to license through PMT would defeat PMT's revenue-generating purpose.

The Plaintiffs make two arguments to support their contention that it is "good business practice" to disclose the

13

Requested COA Data.  First, the Plaintiffs point to real estate companies that publish "migration" information and a social media company that adopted a "Data for Good" initiative during the COVID-19 pandemic and shared location data it had gathered from its users.  These examples miss the mark.  These businesses were not freely disclosing the information which they were also attempting to sell.  Their business models were not built upon the generation of revenue from the sale of this information.  Their free disclosure of the location data sought to promote their revenue generating lines of business and to burnish their public images.

Second, the Plaintiffs emphasize that their FOIA requests do not seek all of the COA information that will be available to licensees through PMT.  They argue that public disclosure of some of the information available through PMT may even promote PMT and benefit the USPS.  This argument fails.  The USPS has carried its burden to show that it is good business practice not to provide for free the data which it is licensing to generate income.  Having carried that burden, it is entitled to protect its PMT database from public disclosure.  The USPS can decide for itself how much COA data it wishes to share publicly and free of cost.

## Conclusion

The Defendant's December 9, 2022 motion for summary judgment is granted. The Plaintiffs' January 20, 2023 motion for summary judgment is denied. The Clerk of Court shall enter judgement for the Defendant and close the case.

Dated: New York, New York
June 13, 2023

_____
DENISE COTE
United States District Judge